IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

PHILLIP RANDOLPH COX,            )
                                 )
        Plaintiff,               )
                                 )
vs.                              )   Case No. 4:12-cv-02087-RDP-PWG
                                 )
GOVERNOR ROBERT BENTLEY,         )
*et al.*,                        )
                                 )
        Defendants.              )

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Phillip Randolph Cox, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he has been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the St. Clair Correctional Facility in Springville, Alabama. The defendants in this action are Governor Robert Bentley; Alabama Department of Corrections Commissioner, Kim Thomas; and St. Clair Correctional Facility Warden, Carter Davenport. The plaintiff seeks injunctive relief. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

CASE HISTORY

On August 31, 2012, the court entered an Order for Special Report directing that copies of the complaint be forwarded to the defendants and requesting they file a special report addressing the plaintiff's factual allegations. The parties were advised that the special report, if appropriate, might be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. On November 14, 2012, the defendants filed a special report accompanied by affidavits and other documents. (Doc. #18). The plaintiff filed an unsworn response to the defendants' special report on November 28, 2012. (Doc. #19). On April 25, 2013, the parties were notified that the court would construe the defendants' special report as a motion for summary judgment and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose. The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed an unsworn response to the defendants' motion for summary judgment on May 7, 2013. (Doc. #27). This matter is now before the court on the defendants' special report (Doc. #18) being construed as a motion for summary judgment.

SUMMARY JUDGMENT STANDARD

Because the special report of the defendants is being considered a motion for summary judgment, the Court must determine whether the moving party, the defendants, are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no

genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.* In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

PLAINTIFF'S FACTUAL ALLEGATIONS

The plaintiff contends that he suffers from cataracts and glaucoma for which he has received inadequate care from prison medical personnel. (Doc's. #8 and #14). He alleges that although he has lost sight in his right eye, and is in danger of losing sight in the left eye, members of the medical staff at the St. Clair Correctional Facility have informed him that "per orders of the Governor, Warden, and Commissioner," the Department of Corrections will not allocate funds to correct his vision because the problem is not life threatening. (Doc. #8, p. 5). Similarly, he claims that he cannot obtain corrective surgery for a problem with his hands because it does not present a life threatening situation. *Id*. He contends that he suffers constant pain in his hands and that his fingers are drawn towards his palms, making it difficult to perform everyday tasks. *Id*. He seeks an order requiring the Department of Corrections to "address the medical problems" described in the complaint. *Id*. at 4.

DEFENDANTS' SPECIAL REPORT

The defendants acknowledge the plaintiff has been diagnosed with three medical conditions: 1.) "Dupuytren's contractures" in both hands; 2.) glaucoma in both eyes; and 3.) "cataracts." (Doc. #18-4). With regard to the glaucoma conditions, Brandon Kinard, the Regional Clinical Manager for the Alabama Department of Corrections, testifies that the plaintiff has been seen "every three to four months" by an on-site ophthalmologist, who has prescribed eye drops. Copies of medical records submitted with the special report show that the plaintiff was evaluated and/or received tests in connection with his glaucoma at least

seven times between the period from March 29, 2011, to August 30, 2012, during which time he received eye drop medications "Alphagn - P" and "Cosopt." *Id.* at 5-28.

Regarding the Dupuytren's contractures, the plaintiff was seen by an outside physician, Dr. Floyd, at the Cooper Green Hospital orthopedic clinic on August 29, 2012. Dr. Floyd's recommendation was for "elective surgical release of contractures bilaterally." (Doc. #18-4, p. 2). Although Corizon initially declined the request to allow the outpatient procedure, the plaintiff was re-evaluated by Dr. Booker at Southlake Orthopedics on November 7, 2012.[1] Dr. Booker also recommended surgical release, but concluded that the plaintiff should be sent to a hand specialist for that procedure. *Id.*, see also Document #18-3. A "Consultation Request" form for the plaintiff to be seen by a hand specialist was submitted to Corizon on November 12, 2012, just two days prior to submission of the defendants' special report. (Doc. #18-3, p. 4). There is presently no evidence before the court that the recommended surgery has been performed on the plaintiff's hands.

The defendants' special report contains sparse information with regard to the plaintiff's cataracts. Brandon Kinard testifies that the on site optometrist, Dr. Hooks, noted on August 30, 2012, that the plaintiff had cataracts, but that Dr. Hooks "did not recommend that the cataracts be evaluated further." (Doc. #18-4, p. 2 and 5).[2] There does not appear to

---

[1] This was five months after initiation of this action and approximately two months after the Order for Special Report was issued.

[2] More accurately, a review of the medical document referenced in Kinard's affidavit shows that it is silent as to further treatment of the cataracts. *See Eye Examination Sheet*, Doc. #18-4, p. 5. There is no *affirmative* statement by the signing optometrist (Dr. Hooks) that further treatment is unnecessary. For purposes of summary judgment, all reasonable inferences must be drawn in favor of the non-moving party. Without more, the court cannot infer that Dr. Hooks found the cataracts to be a benign condition requiring no further medical attention. It is common knowledge that cataracts often require corrective

be mention of cataracts prior to that date in any of the medical records submitted with the special report, and there is nothing in the record which reflects any action taken to treat the plaintiff's cataracts. More importantly, as indicated above, there is nothing before the court to show that further treatment of the plaintiff's cataracts is medically unnecessary.

The affidavits of defendants Thomas and Davenport do not directly address the plaintiff's allegation that the medical staff is under orders to refrain from "spend[ing] the money" to repair his eyes or his hands.[3] In other words, the defendants do not specifically deny the allegation that non life threatening matters are going untreated because of monetary concerns. Instead, the defendants testify in general terms that they have no personal knowledge of the matters alleged in the complaint, that they do not recall receiving any medical complaints from the plaintiff, and that neither has made any *specific* decision regarding the plaintiff's medical care. (Doc. #18-1 and #18-2).[4] The defendants assert that the medical firm "Corizon" is contracted to provide healthcare at Department of Corrections facilities and that decisions regarding inmate care are delegated to the medical staff employed by Corizon.

---

surgery and can lead to serious vision impairment if not treated. In fact, the plaintiff has alleged in the complaint that he has already suffered serious vision impairment; an allegation which must be taken as true for purposes of summary judgment review.

[3] It is not clear if the plaintiff is alleging that this was an order directed at his specific case, or a general order to the medical staff regarding treatment of inmates system wide. In any event, that distinction does not effect the outcome of this report and recommendation.

[4] There is no affidavit from Governor Bentley in the special report.

DISCUSSION

When a state incarcerates an individual, it takes on the responsibility to provide adequate medical care for that individual while he/she is in the state's custody. Having been denied their liberty, prisoners must necessarily rely on prison authorities to provide that care as the need arises. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Therefore, although the Alabama Department of Corrections contracts with a private company to provide medical care for inmates, the ultimate responsibility to provide for the inmates falls on the State and its officers. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 (11th Cir. 1985). The failure to meet this obligation through the deliberate indifference of state actors violates the Eighth Amendment. *Estelle*, 429 U.S. at 104. Deliberate indifference can be evidenced by acts or omissions of individual actors, or can be the result of policy or custom established or utilized by state officials. *Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007).[5]

In this instance, it is undisputed that the plaintiff suffers from three serious medical conditions.[6] Furthermore, there remains a genuine issue of fact as to whether or not the plaintiff has been denied necessary medical care for those conditions as a result of non-

---

[5] See also *Fields v. Corizon Health, Inc.*, 490 Fed.Appx. 174, 183 (11th Cir. 2012) ("A policy may be deliberately indifferent if it is facially unconstitutional or where the policy is implemented with 'deliberate indifference as to its known or obvious consequences'"); *quoting McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004).

[6] "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003) (internal quotations omitted); *quoting Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187. In this instance, the defendants acknowledge three conditions which have either been diagnosed by a physician as requiring treatment and/or which can clearly be recognized as serious.

medical reasons.[7] He contends in his sworn complaint that he has been denied care because "the DOC [will] not spend the money" on his non life threatening conditions. (Doc. #8, p. 5).[8] Additionally, it is alleged that this is the result of a policy promulgated by the defendants and implemented by medical personnel contracted to carry out the state's obligations. Although there is no strict *respondeat superior* liability under § 1983, supervisory liability may be imposed "where a supervisor's improper custom or policy results in deliberate indifference to constitutional rights" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

In their special report, the defendants fail to directly refute the plaintiff's claims regarding the alleged "orders" given to medical personnel, but assert that they have delegated authority to make medical decisions to Corizon employees. However, the defendants are not absolved of all responsibility to ensure the plaintiff's Eighth Amendment rights by delegating authority to the medical provider. If a policy or directive has resulted in deliberate indifference to the plaintiff's serious medical needs, it is immaterial whether the alleged directive in fact came from the defendants, or is the policy of the private medical provider. As the Eleventh Circuit stated in *Ancata*, supra:

> "The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. This duty is not absolved by contracting with an entity such as Prison Health Services.

---

[7] "If necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out." *Ancata*, 769 F.2d at 704.

[8] "Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates." *Ancata*, 769 F.2d at 705.

> Although Prison Health Services has contracted to perform an obligation owed by the county, *the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service*." (Internal citation omitted) (emphasis added).

769 F.2d at 705. In other words, where a private company has been given authority by governmental officials to set policies or customs with regard to health care for inmates, "[the company's] acts, policies, and customs become official policy." *Id*. Therefore, if a particular policy or custom regarding healthcare for inmates results in deliberate indifference towards an inmate's serious medical needs, governments officials may incur liability if the policy was created or implemented by them, or if they allowed the private medical provider to make policy or custom in their stead.[9]

In this instance, the matter is complicated by the fact that the defendants are state officials, not local government officials as was the case in *Ancata*. It is clear that a state may not be sued directly in its own name, and that state officers have Eleventh Amendment immunity for damages claims in their official capacities.[10] However, the plaintiff here has sought prospective injunctive relief, and our courts have held that, despite Eleventh Amendment immunity, "official-capacity actions for prospective relief are not treated as

---

[9] *Ancata* dealt chiefly with liability attaching to a local government *entity* as a result of policy or custom implemented by a private medical provider. However, the court in *Ancata* recognized that government officials may also become individually liable if they establish or utilize a policy or custom that results in deliberate indifference. 769 F.2d at 706; citing *Berdin v. Duggan*, 701 F.2d 909 (11th Cir. 1983).

[10] Of course, the defendants would be subject to damages and injunctive relief in their individual capacities to the extent they are personally involved in any violation of the plaintiff's constitutional rights, except in instances where the suit is one in which the state is in essence "the real party in interest." *Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1577 (11th Cir. 1994).

actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *citing Ex Parte Young*, 209 U.S. 123 (1908). Therefore, to the extent the plaintiff seeks injunctive relief, this court may grant prospective injunctive relief against the defendants in their official capacities. Accordingly, under the holding in *Ancata*, it would appear the defendants could be subject to the plaintiff's injunctive relief claims in their official capacities, even if they did not directly implement the alleged unconstitutional policy, so long as they delegated their authority to implement policy to the medical care provider.

At this point, the defendants have presented no direct evidence to rebut the allegation that they have implemented or allowed a policy which has resulted in deliberate indifference to the plaintiff's serious medical needs. The burden was on them, as the moving parties, to show either that there has been no deliberate indifference towards the plaintiff's medical conditions, or that the deliberate indifference is not attributable to them. They have failed to meet this burden. At the very least, there remains a genuine issue of fact as to whether or not the plaintiff has been denied adequate medical care as a result of policies implemented by or attributable to the defendants. Therefore, summary judgment is improper at this time.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that the defendants' special report be treated as a motion for summary judgment and, as such, that it be **DENIED**. The magistrate judge further RECOMMENDS that this action be referred to the undersigned for further proceedings.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendants.

DONE this the 23rd day of October , 2013.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE